UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| ERIC DUSKIN<br>167 Washington Avenue<br>Cincinnati, Ohio 45246 | : <br> : <br> : <br> : | Case No. 1:19CV00557 |
| vs. | : <br> : <br> : | Judge |
| PERFORMANCE COLLISION<br>CENTER, LTD.<br>3396 Port Union Road<br>Fairfield, Ohio 45014 | : <br> : <br> : <br> : <br> : | |
| and | : <br> : | |
| KEN KOCHER<br>3396 Port Union Road<br>Fairfield, Ohio 45014 | : <br> : <br> : <br> : | |
| and | : <br> : | |
| VERNA JAQURI<br>3396 Port Union Road<br>Fairfield, Ohio 45014 | : <br> : <br> : <br> : | |

_____

**COMPLAINT AND JURY DEMAND**
_____

Plaintiff Eric Duskin, for his Complaint against Defendants, Performance Collision Center, Ltd. ("Performance Collision"), Ken Kocher, and Verna Jaquri, states as follows:

**I.     PRELIMINARY STATEMENT**

1. This is a civil rights action arising out of Plaintiff Eric Duskin's employment with Performance Collision.  Mr. Duskin alleges that he was a victim of discrimination and retaliation and was terminated because of his race while on protected medical leave.

2. Mr. Duskin's claims arise under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 1981, the Ohio Civil Rights Act, and the Family Medical Leave Act ("FMLA").

3. Mr. Duskin seeks relief for the aforementioned acts and/or omissions in the form of compensatory damages for both his economic and non-economic injuries. He also seeks liquidated and/or punitive damages and equitable relief in the form of reinstatement or front pay, and an award of his reasonable attorney's fees and costs in prosecuting this matter.

## II. JURISDICTION AND VENUE

4. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331 to secure protections and redress deprivations of rights conferred by Title VII, 42 U.S.C. § 1981, and the FMLA. This Court may assume supplemental jurisdiction over Mr. Duskin's state law claims pursuant to 28 U.S.C. § 1367 because those claims derive from the same nucleus of operative facts as his federal claims.

5. Venue with this Court is appropriate because all or part of the claim for relief arose in the Southern District of Ohio.

## III. PARTIES

6. Plaintiff Eric Duskin is a United States citizen and a resident of Hamilton County, Ohio. Mr. Duskin is African American.

7. Defendant Performance Collision is an Ohio limited liability company that specializes in automotive collision repair. Performance Collision is an "employer" as that term is defined in Title VII of the Civil Rights Act of 1964, the FMLA, and the Ohio Civil Rights Act.

8. Upon information and belief, Defendant Ken Kocher is a United States citizen and an employee in Performance Collision's human resources department.

9. Upon information and belief, Defendant Verna Jaquri is a United States citizen and an employee in Performance Collision's human resources department.

## IV. ADMINISTRATIVE HISTORY

10. On May 15, 2018, Mr. Duskin filed an administrative charge of discrimination and retaliation against Performance Collision with the Equal Employment Opportunity Commission (473-2018-01125). He alleged that Performance Collision discriminated and retaliated against him for protesting race discrimination in the workplace. Mr. Duskin received his Notice of Right to Sue on April 19, 2019. This action is brought within 90 days of receiving the right-to-sue notice.

## V. STATEMENT OF THE CASE

11. Performance Collision hired Mr. Duskin in or about September 2016 as a Detailer.

12. Performance Collision hired Brian Gideon in or about March 2018. Mr. Gideon is Caucasian.

13. Almost immediately after the start of his employment, Mr. Gideon used the word "nigger" in Mr. Duskin's presence. Mr. Duskin was offended by the comment and reported it to Verna Jaquri, an employee in Performance Collision's human resources ("HR") department. Ms. Jaquri told Mr. Duskin that she would talk with Performance Collision's corporate HR department regarding the incident. To the best of Mr. Duskin's knowledge, Performance Collision never took any remedial action following his complaint.

14. Approximately one month later, Mr. Gideon threw his gloves down on the ground in front of Mr. Duskin and said to him: "pick 'em up, boy."

15. Mr. Duskin submitted a written complaint regarding Mr. Gideon to Ms. Jaquri. In his statement, Mr. Duskin described how Mr. Gideon "brought on unwanted anxiety about coming to work and daily dread of the day ahead."

16. Shortly after submitting the statement, Mr. Gideon approached Mr. Duskin and told him that he knew Mr. Duskin had reported him to HR.

17. In mid-April 2018, Performance Collision arranged a meeting between Mr. Duskin and Mr. Gideon. During this meeting, Performance Collision gave Mr. Gideon a verbal warning for referring to Mr. Duskin as "boy."

18. On or about May 2, 2018, Mr. Duskin reported to work and saw a noose, symbolic of the lynching of African Americans, hanging from the ceiling in the area where he typically worked. Mr. Duskin immediately called Ken Kocher, one of Performance Collision's HR representatives, to report the overtly racist symbol. Mr. Duskin left a voicemail, and his call was not returned. The following day, Mr. Duskin called Mr. Kocher again and left another voicemail.

19. Mr. Duskin was finally able to get Mr. Kocher on the phone on Thursday, May 3. Mr. Duskin suggested that Mr. Kocher come to the work area. Upon arrival, Mr. Duskin took Mr. Kocher to the area where the noose was present but declined to enter the area due to the extreme emotional distress he had from seeing the noose. Mr. Kocher walked to the area and saw the noose.

20. Mr. Kocher returned to where Mr. Duskin had been standing. Mr. Duskin asked Mr. Kocher how he was supposed to work in the face of such a violent, racially-motivated threat. He then requested time off from work to recover from the emotional distress until HR could investigate the matter. Performance Collision granted that request.

21. On May 7, 2018, Mr. Duskin met with Kathy Shewak, a regional HR representative. Ms. Shewak told Mr. Duskin to "lay low" until she could investigate his allegations. She further indicated that she may have to bypass normal HR procedures due to the severity of the situation.

22. On or about May 10, 2018, Mr. Duskin received a letter in the mail from Mr. Kocher. The letter stated that the noose was a "pulling mechanism for the garage door," and that HR "did not find any credible information to support a finding that [Performance] Collision management or employees have created a hostile working environment or have discriminated against you."

23. On May 11, 2018, Mr. Kocher called Mr. Duskin and requested to meet with him at Mr. Kocher's office at 1pm. Mr. Duskin agreed to meet. On his way, he encountered a traffic jam caused by an automobile accident that delayed his arrival at Mr. Kocher's office. Mr. Duskin immediately called the office to inform Mr. Kocher's assistant that he would be a few minutes late to the meeting. Mr. Duskin arrived approximately 15 minutes late and was told that Mr. Kocher had left the office.

24. On May 15, 2018, Mr. Duskin spoke with Ms. Jaquri and Mr. Kocher about his return to work. Mr. Duskin indicated his desire to return to work, but that he did not feel comfortable about returning until Performance Collision resolved the racially-hostile and physically threatening situation. He asked if Performance Collision had taken any steps to remediate the racially-hostile environment. Mr. Kocher indicated that nothing about the situation had changed, and sarcastically asked Mr. Duskin, "what do you want me to do, fire everybody?" Mr. Kocher and Ms. Jaquri then told Mr. Duskin that they had each interviewed a few employees about Mr. Duskin's claims of working in a hostile environment but made clear that they were not willing to take further action to remediate the racially-hostile environment.

25. Surprised by Mr. Kocher and Ms. Jaquri's response, Mr. Duskin called Ms. Shewak. She did not answer and did not return his call.

26. On May 19, 2018, Mr. Duskin received a letter from Performance Collision stating that he had been terminated on May 16, 2018 for absenteeism.

27. The acts and/or omissions of Defendants were taken or omitted intentionally, maliciously, and/or purposefully with a conscious and deliberate disregard for Mr. Duskin's rights under federal and state civil rights laws to be free from acts of discrimination in employment on account of race, retaliation for protesting acts of discrimination in the workplace, and being terminated while on protected medical leave.

28. As a direct and proximate result of Defendants' actions, Mr. Duskin has suffered and will continue to suffer damages from lost income and benefits, emotional distress, and damage to his professional reputation.

## VI. STATEMENT OF CLAIMS

### Count 1: Race Discrimination
### Against Performance Collision: 42 U.S.C. § 2000e & Ohio Rev. Code § 4112
### Against All Defendants: 42 U.S.C. § 1981

29. Plaintiff incorporates paragraphs 1 through 28 as if fully rewritten herein.

30. Mr. Duskin is African American.

31. Defendants terminated Mr. Duskin for raising complaints of race discrimination.

32. Mr. Duskin was qualified for the position of Detailer.

33. Mr. Duskin was treated less favorably than his white coworkers.

34. As a result of the Defendants' actions, Mr. Duskin suffered damages, including lost wages and emotional distress.

### Count 2: Retaliation
### Against Performance Collision: 42 U.S.C. § 2000e & Ohio Rev. Code § 4112
### Against All Defendants: 42 U.S.C. § 1981

35. Plaintiff incorporates paragraphs 1 through 34 as if fully rewritten herein.

36. Mr. Duskin engaged in activity protected by Title VII when he opposed race discrimination.

37. Defendants were aware of Mr. Duskin's protected activity.

38. Defendants took adverse action against Mr. Duskin after he complained of a racially-hostile working environment, ignoring his complaints, and subsequently terminating him.

39. There is a causal connection between Mr. Duskin's complaints of racial discrimination and the adverse action Defendants took against him.

40. Defendants' stated reasons for terminating Mr. Duskin are pretext for illegal retaliation.

41. As a result of Defendants' actions, Mr. Duskin suffered damages, including lost wages and emotional distress.

### Count 3: Hostile Work Environment
### Against Performance Collision: 42 U.S.C. § 2000e & Ohio Rev. Code § 4112

42. Plaintiff incorporates paragraphs 1 through 41 as if fully rewritten herein.

43. Mr. Duskin is African American.

44. Mr. Duskin was subject to unwelcome harassment on the basis of his race.

45. The harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment.

46. Performance Collision knew or should have known about the harassment and failed to act.

47. As a result of Performance Collision's actions, Mr. Duskin suffered damages, including lost wages and emotional distress.

### Count 4: Aiding and Abetting Race Discrimination
### Against Defendants Kocher and Jaquri: Ohio Rev. Code § 4112(J)

48. Plaintiff incorporates paragraphs 1 through 47 as if fully rewritten herein.

49. Mr. Duskin was subjected to unwelcome harassment on the basis of his race.

50. The harassment was sufficiently severe to affect a term, condition, or privilege of employment.

51. Mr. Kocher and Ms. Jaquri, by their actions and omissions, aided and abetted the harassment of Mr. Duskin in violation of Ohio law.

52. Mr. Kocher and Ms. Jaquri were aware of the harassment and failed to take appropriate corrective action. In so doing, Mr. Kocher and Ms. Jaquri created a racially-hostile working environment.

53. By failing to take appropriate corrective action, Mr. Kocher and Ms. Jaquri obstructed and prevented Performance Collision and its agents from complying with Ohio law.

54. Mr. Kocher and Ms. Jaquri attempted, directly and indirectly, to commit acts declared by Ohio Rev. Code § 4112.02 to be an unlawful discriminatory practice.

55. Mr. Kocher and Ms. Jaquri took adverse action against Mr. Duskin when they terminated his employment.

56. There is a causal connection between Mr. Duskin's termination and his race.

57. As a result of the individual defendants' actions, Mr. Duskin suffered damages, including lost wages and emotional distress.

### Count 5: FMLA Interference
### Against Performance Collision: 29 U.S.C. § 2601

58. Plaintiff incorporates paragraphs 1 through 57 as if fully rewritten herein.

59. Mr. Duskin was entitled to FMLA leave.

60. Performance Collision interfered with Mr. Duskin's use of FMLA leave between May 3 and May 19 by terminating him and refusing to reinstate him following his use of leave. Performance Collision used Mr. Duskin's FMLA leave as a negative factor in the decision to terminate his employment.

61. As a result of Performance Collision's actions, Mr. Duskin suffered damages, including lost wages and other economic harm.

62. Performance Collision acted in bad faith.

## **PRAYER FOR RELIEF**

Wherefore, Mr. Duskin demands judgment against Performance Collision, Ken Kocher, and Verna Jaquri as follows:

1. An award of compensatory damages for all economic damages suffered by Mr. Duskin in an amount to be determined at trial;

2. An equal amount in liquidated damages;

3. An award of compensatory damages for all non-economic damages suffered by Mr. Duskin in an amount to be determined at trial;

4. For an order reinstating Mr. Duskin to his previous position at Performance Collision, inclusive of all pay increases and benefits to which he would have been entitled had he not been terminated, or in the alternative, an award of front pay;

5. For an award of punitive damages in an amount to be determined at trial;

6. For an award of Mr. Duskin's reasonable attorney fees and costs;

7. For an award of any other relief in law or equity to which Mr. Duskin is entitled under the premises.

Respectfully submitted,

**MEZIBOV BUTLER**

/s/ Brian J. Butler
Brian J. Butler (OH No. 0082675)
Daniel J. Treadaway (OH No. 0098000)
615 Elsinore Place
Cincinnati, OH 45202
Phone: 513.621.8800
Fax: 513.621.8833
bbutler@mezibov.com
dtreadaway@mezibov.com

*Attorneys for Plaintiff Eric Duskin*

## JURY DEMAND

Plaintiff Eric Duskin demands a jury trial to resolve all issues of fact related to his Complaint.

/s/ Brian J. Butler
Brian J. Butler (OH No. 0082675)